United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ERNESTO MANZANO,
Plaintiff,
v.
CITY OF SALINAS, et al.,
Defendants.

Case No. 5:24-cv-03756-EJD

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ernesto Manzano ("Plaintiff") brings claims against Salinas police officers Robert Zuniga ("Zuniga") and Jose Luis Fletes ("Fletes"), as well as the City of Salinas ("the City"), arising from his arrest on April 28, 2023. Compl., ECF No. 1. Plaintiff sues the individual officers for excessive force, denial of medical care, and malicious prosecution, in violation of his Fourth Amendment rights, and for retaliation against questioning police action in violation of his First Amendment rights. Plaintiff sues the City for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiff also brings five state-law claims against the officers: a Bane Act violation, battery, intentional infliction of emotional distress, negligence, and malicious prosecution.

Defendants moved for summary judgment under Rule 56(c) (the "Motion"). Mot., ECF No. 32. Plaintiff opposed, and Defendants replied. Opp., ECF No. 33; Reply, ECF No. 36. The Court heard the motion on June 25, 2026. Based on the parties' written submissions and oral arguments at the hearing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.

## I. BACKGROUND

In the early morning of April 28, 2023, a 911 caller reported that a man at 1667 Cambrian Drive in Salinas, California, was high on drugs, acting erratically, possessed a handgun, and had a warrant out for his arrest. Decl. of Jose Luis Fletes, Jr. (Fletes Decl.) ¶¶ 3–4, ECF No. 32-3. When this report was relayed to Defendant Fletes, he conducted a records check that revealed Plaintiff had an active felony arrest warrant and an active misdemeanor arrest warrant. *Id.* ¶ 5. Sergeant Zachary Dunagan, the incident commander, assigned Defendants Zuniga and Fletes (collectively, "Defendant Officers"), along with K-9 Tyson, to station themselves at 1659 Los Gatos Way, directly behind 1667 Cambrian Drive, and prevent Plaintiff from fleeing in that direction. Decl. of Zachary Dunagan (Dunagan Decl.) ¶ 5, ECF No. 32-3. Other officers at the front of the residence used their public announcement system to request that Plaintiff exit the residence and surrender to police custody. *Id.* ¶ 6.

The officers, including Defendant Officers, saw light and heard movement along the back of the property. Fletes Decl. ¶ 7. Plaintiff then jumped the fence dividing the two properties, landing in the backyard of 1659 Los Gatos Way, where Defendant Officers were stationed. *Id.* ¶ 8; Decl. of Robert Zuniga (Zuniga Decl.) ¶ 6, ECF No. 32-3. Defendant Officers saw Plaintiff move along the fence line of 1659 Los Gatos Way. Fletes Decl. ¶ 9, Zuniga Decl. ¶ 6. Defendant Fletes observed that Plaintiff's hand was "tightly clenched in a fist as if he were holding something." Fletes Decl. ¶ 9. Defendant Officers then saw Plaintiff attempt to jump another fence between 1659 Los Gatos Way and the property directly to the north. Fletes Decl. ¶ 9, Zuniga Decl. ¶ 6. Without warning that a police dog would be used, Defendant Fletes deployed K-9 Tyson. Fletes Decl. ¶ 11. Tyson apprehended Plaintiff as he was attempting to jump the fence. *Id.* ¶ 12. Defendant Fletes ran toward Plaintiff and pulled him off the fence and to the ground; Tyson remained sicced on Plaintiff at this time. *Id.*

Defendant Fletes ordered Plaintiff to lie on his stomach and show his hands, but Plaintiff did not comply and kept his right hand beneath his body with his fist clenched. *Id.* Defendant Fletes believed that Plaintiff was attempting to conceal a firearm. *Id.* Defendant Fletes grabbed

Plaintiff's right arm and attempted to pull it out from underneath him, but Defendant resisted. *Id.* Finally, Defendant Fletes rolled Plaintiff onto his side and put his knee in Plaintiff's back, at which point Plaintiff released a clear plastic bag containing a white crystallized substance. *Id.* Tyson continued to bite Plaintiff's left hip throughout this portion of the encounter. *See* Fletes Dep., 43:8-46:10, October 7, 2025, ECF No. 33-1.

Plaintiff sat up and put his left arm around Tyson's neck. Fletes Decl. ¶ 13. Defendant Fletes struck Plaintiff twice, causing him to release Tyson. *Id.* As Defendant Fletes tried to force Plaintiff into a prone position, Plaintiff grabbed Tyson by the snout and began striking him. *Id.* Defendant Fletes struck Plaintiff twice more, Tyson released Plaintiff's left thigh and apprehended Plaintiff's right bicep, and Defendant Fletes forced Plaintiff into the prone position and placed him in handcuffs. *Id.* He then commanded Tyson to release Plaintiff. *Id.*

Other officers arrived on the scene and helped move Plaintiff from the backyard of 1659 Los Gatos Way to the front of 1667 Cambrian Drive. *Id.* ¶ 14. The officers requested medical care for Plaintiff, and members of the Salinas Fire Department and American Medical Response arrived to evaluate and treat Plaintiff's injuries. *Id.* Plaintiff was then placed in a patrol vehicle and transported to Natividad Medical Center for further treatment. *Id.*

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it would affect the outcome of the suit under the governing law, and a disputed issue is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is,

pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party clears this initial hurdle, the burden then shifts to the non-moving party to produce admissible evidence and set forth specific facts showing that a genuine issue of material fact does indeed exist for trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). If the non-moving party produces enough evidence to show a genuine issue of material fact exists, then it defeats the motion; otherwise, the moving party is entitled to summary judgment. *Id.*

In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *See Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The Court may not weigh conflicting evidence as to a disputed fact nor may it make credibility determinations; any disputed factual issues must be resolved in favor of the non-moving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). However, the Court need not credit the non-moving party's version of events where it is blatantly contradicted by the record. *See Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020).

## III. DISCUSSION

As an initial matter, Plaintiff concedes his claims regarding denial of medical care, malicious prosecution, retaliation, questioning police action, as well as his Monell claim against the City. Mot. Hr'g Tr. 20:1-12, June 25, 2026.

Remaining are Plaintiff's federal claim of excessive force under the Fourth Amendment and his state-law claims of violation of the Bane Act, battery, negligence, and intentional infliction of emotional distress. The Court addresses each of these remaining claims in turn.

### A. Claim One: Excessive Force

For his federal constitutional claims, Plaintiff invokes 42 U.S.C. § 1983 as the statutory cause of action. "To succeed on a § 1983 claim, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). No Defendant has contended that they were not acting under color

of state law; therefore, the Court's primary inquiry will be whether Defendants deprived Plaintiff of a federal constitutional or statutory right.

Plaintiff's first claim alleges that Officers Zuniga and Fletes, "acting in the performance of their official duties, used excessive force against Plaintiff" in violation of Plaintiff's rights under the Fourth Amendment. Compl. ¶ 40. Plaintiff's main argument does not focus on the initial deployment of the police canine, but rather centers on whether the duration of the force was excessive: K-9 Tyson continued to bite Plaintiff for almost two minutes while Defendant Officers attempted to handcuff Plaintiff. Opp. 1; *see* Officer Zuniga Body-Worn Camera Footage at 2:40-4:33**,** Exhibit 2 to Mot., ECF No. 32-3.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. To determine whether the force used by officers was excessive, the court must "assess whether it was objectively reasonable 'in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation.' " *Gregory v. Cnty. of Maui*, 523 F.3d 1103, 1106 (9th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)); *see also Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 427–28 (2017) (reasonableness is the touchstone of the Fourth Amendment analysis and generally assessed by weighing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion).

Defendant Officers move for summary judgment as to Plaintiff's first claim on two grounds: that the force used was not excessive, and that they are entitled to qualified immunity.

**1. Whether the Force Was Excessive**

The Ninth Circuit employs a three-step inquiry to evaluate excessive force claims. *See Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011). The first step "assess[es] the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Id.* (internal citation omitted). Second, courts assess the government's interest in using that force. *Id.* And third, courts weigh the severity of the intrusion against the

government's interest.

Excessive use of force cases "nearly always require[ ] a jury to sift through factual contents" and, as a result, summary judgment in such cases "should be granted sparingly." *Id.*

**a. Severity of the Intrusion**

Courts analyze the severity of the intrusion for K-9 attacks by examining the "specific factual circumstances" of the case. *Lowry v. City of San Diego*, 858 F.3d 1248, 1256–57 (9th Cir. 2017). The Ninth Circuit has left open the possibility that a K-9 attack could constitute deadly force. *Smith v. City of Hemet*, 394 F.3d 689, 707 (9th Cir. 2005) ("[W]hile we have not in any of our prior cases found that the use of police dogs constituted deadly force, we have never stated that the use of such dogs cannot constitute such force."). In *Miller v. Clark County*, the Ninth Circuit also found that "ordering a police dog to bite a suspect's arm or leg *and permitting the dog to continue biting for up to one minute*, an unusually long bite duration," constitutes a "serious" intrusion. *Miller v. Clark Cnty.*, 340 F.3d 959, 962 (9th Cir. 2003) (emphasis in original).

Neither party disputes that this factor favors Plaintiff. A reasonable jury could find that the use of the canine here to apprehend the Plaintiff involved substantial force resulting in a severe intrusion. This is particularly so, when viewing the evidence in the light most favorable to the Plaintiff, as K-9 Tyson continued to bite Plaintiff for almost two minutes. *See id.* Thus, this factor strongly weighs in Plaintiff's favor.

**b. Governmental Interest**

To evaluate the state's interests at stake, courts consider three factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). These factors are non-exhaustive, and the court must examine the totality of the circumstances, including the availability of less intrusive alternatives to the force employed and whether proper warnings were given. *Rice v. Morehouse*, 989 F.3d 1112, 1122 (9th Cir. 2021) (citation omitted).

**i. Severity of the Crime at Issue**

United States District Court
Northern District of California

Plaintiff had two outstanding warrants: a felony warrant for violation of terms of post-release community supervision, and a misdemeanor warrant for willfully inflicting injury on a spouse or cohabitant. Mot. 3. Defendant Officers had also received a report that Plaintiff was on drugs and had a gun, and also point to that Plaintiff was attempting to flee arrest. Mot. 8; Fletes Decl. ¶¶ 3–4. Defendants otherwise represent that they did not see a crime. Mot. Hr'g Tr. 11:23-24.

Plaintiff, in opposition, points to Ninth Circuit precedent holding that government interest in force diminishes when the offenses were nonviolent and the suspect "posed no threat to the safety of the officers or others." *Bryan v. MacPherson*, 630 F.3d 805, 828 (9th Cir. 2010). In that case, the suspected offenses were failure to wear a seatbelt, resisting a police officer, failure to comply with a lawful order, and being under the use of a controlled substance. *Id.* In contrast, one of Plaintiff's underlying offenses here—the domestic violence charge—was violent, and Defendant Officers believed that Plaintiff possessed a firearm (which, he ultimately did not). But Defendants do not explain how the present facts compare to *Bryan* or any other case to argue that the crime here was sufficiently severe to justify substantial use of force. *See* Reply 2.

The Court finds, on balance, that Defendants have not met their burden on this factor. Defendants do not point to any actual or apparent crime at issue, nor have they cited authority to show that Plaintiff having outstanding warrants and being on drugs justified the level of force used here. And a jury could find it unreasonable for Defendants Officers to continue believing a crime of any sufficient severity was occurring after they saw Plaintiff and his tightly closed fist. The Court concludes that this factor weighs slightly in Plaintiff's favor.

**ii. Whether the Suspect Poses an Immediate Threat to the Safety of Officers or Others**

Whether a suspect poses an immediate threat to officer safety is "the most important single element" in evaluating the government's interest. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). The Court addresses separately the threat to officer safety at the time Defendant Fletes initially deployed Tyson and while Tyson was biting Plaintiff.

<u>Initial Deployment of K-9 Tyson</u>

Before arriving at the scene, Defendant Officers had received a report that Plaintiff was armed, and, at the scene, Defendant Fletes saw Plaintiff's fist tightly closed on an object he could not see. Fletes Decl. ¶¶ 3–4, 9. Plaintiff was attempting to jump another fence when Defendant Fletes sicced Tyson on him. *Id.* ¶¶ 10, 12. Defendant Fletes explains that, at that moment, he feared Plaintiff "might force his way into another residence" or, after jumping the fence, that Plaintiff would "conceal himself and put pursuing officers at a tactical disadvantage." *Id.* Defendant Officers argue, accordingly, they were reasonable in their belief that Plaintiff "posed an immediate, deadly threat to the officers and other persons." Mot. 8.

The Ninth Circuit's decisions in *Miller v. Clark*, 340 F.3d 959 (9th Cir. 2003) and *Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017) provide guidance regarding the circumstances in which a suspect poses a sufficient threat justify the deployment of a police dog. In *Miller*, a man fled into the woods on his parents' property following a traffic violation, and the police officer released a canine to apprehend him. *Miller*, 340 F.3d at 960. The Ninth Circuit concluded the threat to officer safety was "immediate" because the officer did not know where the man was hiding, the man was familiar with the terrain, and the officer had seen a knife on the car's seat. *Id.* at 965. The Ninth Circuit concluded that the man possessed a strategic advantage, which entitled the officer to assume that the man posed an immediate threat. *Id.*

In *Lowry*, the police entered an office building whose alarm was going off, suspecting that a burglary was in process. *Lowry*, 858 F.3d at 1252–53. The plaintiff had in fact simply been drinking and had tripped the alarm and fallen asleep on the couch. *Id.* The police called for the suspected intruder to surrender and, receiving no answer, released a police dog. *Id.* The Ninth Circuit held that the officers were justified in believing the threat was immediate. *Id.* at 1258.

The initial deployment of Tyson is distinguishable from the circumstances in *Miller* and *Lowry*. Defendant Officers were not at a strategic disadvantage, as in *Miller*. Nor did they have to fear that Plaintiff was lying in wait, as in *Lowry*. Indeed, Defendant Officers knew exactly where Plaintiff was. And although they had reason to believe Plaintiff had a gun, a jury could also

conclude that—since Plaintiff was moving in the opposite direction of the officers and attempting to scale a fence—it was extremely unlikely that Plaintiff planned to fire the gun at the officers. Thus, based on the totality of circumstances, a jury could find it unreasonable for Defendant Officers to believe Plaintiff posed an immediate threat that warranted any escalation in force.

Construing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff did not pose an immediate threat to the officers' safety when Defendant Fletes deployed Tyson.

Tyson's Continued Bite

Defendants argue that once Plaintiff was on the ground, it was reasonable for Defendant Fletes not to call K-9 Tyson off from biting Plaintiff. Reply 4. Specifically, as Plaintiff "clenched his fist underneath his body," "refused to allow himself to be handcuffed," and "fought with the K9," Defendant Officers did not have control over Plaintiff. *Id.* Plaintiff disagrees and argues he was "effectively subdued within seconds of being taken to the ground and that the continued bite exceeded the time necessary to gain control." Opp. 8 (citing Exhibit A to Plaintiff's Expert Disclosure at 164, ECF 33-1).

The body-worn camera footage shows that once Plaintiff was on the ground lying on his back, Tyson remained latched onto Plaintiff's left hip as Defendant Officers commanded Plaintiff to show his hands and roll onto his stomach. Officer Zuniga Body-Worn Camera Footage at 3:00–3:10, Exhibit 2 to Mot., ECF No. 32-3. Plaintiff shouts "I can't!" and "but he's biting me!" *Id.* at 3:10–3:17. Plaintiff also yells "He's killing me!" and shouts several times in pain. *Id.* at 3:17-3:31. Construing this evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff was physically incapable of complying with the officers' commands because he could roll toward neither his left nor his right side while Tyson was latched onto his hip, and that he was not actively resisting but in pain from the continued dog bite.

Defendant Fletes then forces Plaintiff to release his clenched right fist, revealing a bag of meth. Officer Fletes Body-Worn Camera Footage at 3:22–3:31, Exhibit 3 to Mot., ECF No. 32-3. Both of Plaintiff's hands become visible, yet Defendant Fletes did not issue the command for

Tyson to release Plaintiff until several seconds after Plaintiff had been handcuffed. *Id.* at 4:09–4:31. Though Plaintiff continued to struggle with Tyson, a reasonable jury could conclude that Defendant Officers were no longer justified in believing the threat was immediate.

In sum, even if a jury conclude that Plaintiff posed a danger to officers or the public when he was attempting to climb the fence, that same jury could conclude that Plaintiff no longer posed a threat to officers when he was on the ground and responded to Defendant Officers that he was incapable of turning onto his stomach, or when both of Plaintiff's hands became visible. As it seems unlikely Plaintiff posed an immediate threat to the Defendant Officers at several points throughout the extended duration of the dog bite, the Court finds that this factor weighs strongly in Plaintiff's favor.

**iii. Whether Plaintiff Was Attempting to Evade Arrest**

Finally, courts consider whether the plaintiff was resisting or attempting to evade arrest. *Lowry*, 858 F.3d at 1258. The Ninth Circuit recognizes that purely passive resistance may justify use of force, but the level of force is "dependent on the factual circumstances underlying that resistance." *Id.* (quoting *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010)). The Court again addresses separately this factor at the time Defendant Fletes initially deployed Tyson and while Tyson was biting Plaintiff.

Initial Deployment of K-9 Tyson

Plaintiff claims that he did not know the police were at the house, and that he simply began running from the property because he heard a loud noise that he assumed to be a gunshot. Manzano Dep. 87:21–88:22 (July 22, 2025), Ex. 11 to Mot, ECF No. 32-3. Plaintiff further alleges in his Complaint that he then ran past Defendant Officers, Compl. ¶ 18, but also suggests that he did not know that the police were present until he was scaling the fence and Tyson bit him, Manzano Dep. 93:4–14 (July 22, 2025), Ex. 11 to Mot. Plaintiff was aware of the warrant for his arrest. *Id.* 82:23–83:16. Defendants explain that when they arrived at the property, they observed Plaintiff jumping the first fence, and that Plaintiff began to run for the second fence when Defendant Officers aimed their flashlight at him. Fletes Dec. ¶¶ 7–9.

United States District Court
Northern District of California

The Court finds it likely, even construing the evidence in the light most favorable to Plaintiff, that a reasonable jury would conclude Plaintiff was evading arrest when Officer Fletes deployed Tyson.

<u>Tyson's Continued Bite</u>

Defendants argue that Plaintiff continued to resist arrest throughout the duration of Tyson's bite, and point to that Plaintiff failed to comply with the Defendant Officers' commands and attempted to strike or harm Tyson while the canine was attached. Mot. Hr'g Tr. 27:16-25. Plaintiff, on the other hand, argues that he was in pain and struggling to comply with the Defendant Officers' commands. *Id* 23:17-24:18. Plaintiff reiterates that compliance with Defendant Officers' commands to roll over was also not possible because Tyson was attached to Plaintiff's hip. *Id.*

Construing the evidence in the light most favorable to Plaintiff, a reasonable jury could diverge as to whether Plaintiff was actively resisting arrest while Tyson was attached to Plaintiff's hip. Accordingly, the Court finds that this factor weighs slightly in favor of Plaintiff.

**iv. Other Factors**

In assessing the City's interest in the use of force, the Ninth Circuit has also identified "whether proper warnings were given" and "the availability of less intrusive alternatives to the force employed" as other relevant factors. *Lowry v. City of San Diego*, 858 F.3d 1248, 1259 (9th Cir. 2017) (citing *Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011)).

Defendant Fletes did not give any verbal warning to Plaintiff that a police dog may be deployed before commanding K-9 Tyson to apprehend Plaintiff. Fletes Dec. ¶¶ 9–10. This is not disputed. Defendant Officers, in fact, do not appear to give any verbal warning or command, nor attempt any lesser intrusive alternatives, before deploying the police canine. Officer Fletes Body-Worn Camera Footage at 2:22-2:35; Officer Zuniga Body-Worn Camera Footage at 2:25-2:35.

The Court is mindful that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Lowry*, 858 F.3d at 1259 (citing *Graham v.*

*Connor*, 490 U.S. 386, 397 (1989)). Defendant Fletes explains that he did not give a verbal warning because he "feared that it might lead to a violent confrontation," and that he chose to immediately deploy Tyson because Plaintiff "might force his way into another residence" or, after jumping the fence, that Plaintiff would "conceal himself and put pursuing officers at a tactical disadvantage." Fletes Dec. ¶¶ 10, 11. Construing the evidence in the light most favorable to Plaintiff, however, a reasonable jury could conclude differently as to whether Plaintiff posed any immediate threat. *See* Part III(A)(1)(b)(ii).

The parties do not suggest what alternatives were or were not available for Defendant Officers to employ before releasing Tyson, and so the Court will not speculate as to the appropriateness of those alternatives. It is clear, however, that Defendant Fletes decided to begin the encounter by immediately deploying Tyson and without issuing any verbal warning or prior command to Plaintiff whatsoever. On balance, the Court concludes that these considerations weigh in Plaintiff's favor.

**c. Balancing of Interests**

As discussed, the severity of the intrusion factor clearly favors Plaintiff. The governmental interest, meanwhile, slightly favors Plaintiff. Applying the required balancing analysis, the Court cannot conclude that any governmental interest necessarily justified the initial bite or its continued duration. There are also disputes of material fact sufficient for a jury to conclude that the Defendant Officers' deployment of K-9 Tyson and the duration of Tyson's bite amounted to excessive force in violation of Plaintiff's Fourth Amendment right.[1]

---

[1] The Court notes that Plaintiff's allegations of excessive force largely involve the conduct of Officer Fletes, who is K-9 Tyson's handler and decided when to deploy or withdraw the police canine. *See generally* Compl. Yet, Plaintiff alleges that Officer Zuniga is also liable because the Defendant Officers work together as a group, support and assist each other's actions, and failed to intervene or prevent harm by their colleagues. *Id.* ¶¶ 26–28.

While officers are generally not liable under the Fourth Amendment for the conduct of other officers, they can be liable when they are an "integral participant" in the conduct that caused the constitutional violation. *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n. 12 (9th Cir.2007)). While Officer Zuniga did not issue Tyson's commands, he was directly involved in chasing and subduing Plaintiff while Tyson was attached and Officer Fletes attempted to handcuff him, Compl. ¶ 22, and

**2. Qualified Immunity**

Although Plaintiff has shown that a jury could find a violation of his Fourth Amendment rights, Defendant Officers can nonetheless prevail on summary judgment if the undisputed facts demonstrate that they are entitled to qualified immunity.

"The defense of qualified immunity protects 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). It "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). The doctrine also "balance[s] two important, competing interests: the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes." *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017).

Qualified immunity shields state and local officials from 1983 liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome this immunity, a plaintiff must prove both "that (1) the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

The Court has already found a triable issue of material fact as to whether the use of force by Defendant Officers violated the Fourth Amendment, see *supra* Part III(A)(1), and thus the burden now shifts to Plaintiff to show that the constitutional rights implicated here were clearly established at that time. Whether a right was clearly established is based on the law at the time of the alleged violation: the officers are "entitled to qualified immunity unless existing precedent

---

thus Officer Zuniga was plainly an active participant in this activity. Thus, a reasonable jury could find that Officer Zuniga was an "integral participant" such that he would also be liable for Plaintiff's claims of excessive force.

squarely governs the specific facts at issue." *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). There need not be a case directly on point, but the case law must place the statutory or constitutional right at issue "beyond debate." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Put another way, "the right's contours [must have been] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela*, 584 U.S. at 105 (internal citation omitted). "[W]hen there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017)).

Defendant Officers argue that they are entitled to qualified immunity because, at the time of the bite, no existing caselaw demonstrated that either the initial apprehension of Plaintiff or the duration of the bite violated Plaintiff's Fourth Amendment rights. Mot. 11–13. Plaintiff does not address the initial deployment in their opposition, but does point to Ninth Circuit authority to argue that a prolonged police dog bite after a suspect has been subdued is a constitutional violation. Opp. 10. The Court addresses separately whether a right was clearly established at the time Defendant Fletes initially deployed Tyson and for the duration that Tyson was biting Plaintiff.

**a. Initial Deployment of K-9 Tyson**

"The contours of the right as related to the use of a police dog have been clearly established in the Ninth Circuit since at least 1994." *Dawson v. Cnty. of Stanislaus*, No. 1:20-CV-372-BAM, 2023 WL 2059081, at *15 (E.D. Cal. Feb. 16, 2023) (referring to *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994), *as amended* (May 31, 1994)). In *Mendoza*, the suspect had just committed a bank robbery and was in hiding. *Mendoza*, 27 F.3d at 1358. The officers believed the suspect was armed, and the police helicopter made at least twenty announcements that a police dog may be deployed before deploying the dog. *Id.* Although the Ninth Circuit concluded that the officers' conduct ultimately did not violate a constitutional right, the Ninth Circuit stated that

"[w]e do not believe that a more particularized expression of the law is necessary for law enforcement officials using police dogs to understand that under some circumstances the use of such a 'weapon' might become unlawful." *Id.* at 1362. As to whether Defendant Fletes' initial deployment of K-9 Tyson was specifically unlawful, the Court surveys the judicial landscape to determine if the right was clearly established in the caselaw prior to the date of the incident.

In *Fallis v. Sasaki*, the police were pursuing a felony suspect on foot. No. C09-5730BHS, 2011 WL 111724, at *2 (W.D. Wash. Jan. 13, 2011). After they set up a containment perimeter around where the suspect was hiding, the officers deployed the police dog without warning to apprehend the suspect. *Id.* The *Fallis* court considered the state of the law as to whether a warning is required before a police dog is released. As there was no relevant authority in the Ninth Circuit at that time, the court found that "since 1991 cases from other circuits have clearly established that when a suspect is not hiding, a warning is required before a police dog is released to bite." *Id.* at *11 (emphasis omitted). The *Fallis* court, however, declined to recognize a clearly established right on the facts before it, as the suspect was concealed when the police dog was deployed without warning. *Id.* at *12.

In *Judge v. Cnty. of Los Angeles*, the officers were in pursuit of a felon who had dropped a shotgun before fleeing into a residential neighborhood to escape arrest. No. CV 18-2181-JFW(RAOX), 2019 WL 13031847, at *1 (C.D. Cal. Feb. 5, 2019). The officers believed the suspect still may have been armed, and, after issuing verbal warning, released a police dog into a backyard where the suspect was hiding to apprehend him. *Id.* The *Judge* court found that it was not clearly established that the use of a police canine under these particular circumstances constituted excessive force. *Id.* at *6.

Most recently, in *Smith v. City of Stockton*, the Ninth Circuit reversed a denial of qualified immunity where an officer deployed his police dog without warning to pursue a suspect who was fleeing, unarmed, and the subject of felony arrest warrant. 818 F. App'x 697, 699–700 (9th Cir. 2020). The dog remained in the officer's proximity and never actually made physical contact with the suspect. The Ninth Circuit held that "[t]here was no clearly established law that would have

alerted an officer in city police officer's position that releasing dog to apprehend suspect, who was subject of felony arrest warrant, and who began to flee from traffic stop, would violate Fourth Amendment." *Id.* at 700.

The Ninth Circuit's decision in *Smith* is instructive here. On one hand, Plaintiff's circumstances can be distinguished from *Fallis* and *Judge*, as Plaintiff was not in hiding but in open view when Defendant Fletes released the police dog. The caselaw outside this Circuit cited in *Fallis* finding the failure to warn objectively unreasonable is persuasive, albeit not binding, authority. On the other hand, however, the present facts are closer to *Smith* as Plaintiff was in flight and the subject of a felon arrest warrant when the police dog was sicced on him without warning. *See Smith*, 818 F. App'x 697 at 700. Importantly, it was also known to the officers in *Smith* that the suspect was unarmed. *Id.*

The Court concludes that the caselaw does not clearly establish a right where an officer releases a police dog on a fleeing suspect without issuing a warning beforehand. That a jury here could find that Defendant Officers acted unreasonably in believing Plaintiff was armed or an immediate threat after seeing him does not change the result warranted by *Smith*. Therefore, Defendant Officers are shielded by qualified immunity from suit as to their conduct in initially deploying Tyson, and the Court **GRANTS** summary judgment on Plaintiff's § 1983 excessive force claim as it concerns the narrow issue of Tyson's initial deployment.

**b. Continuation and Duration of Bite**

The caselaw, however, is much clearer as to the conduct of allowing police dogs to bite unresisting suspects who do not pose a threat to safety, as well as excessive duration of the bite. It has long been established law that allowing police dogs to bite unresisting suspects who do not pose a threat to safety is unconstitutional. *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017) (citing *Drummond ex Rel. Drummond v. City of Anaheim*, 343 F.3d 1052 at 1057–58 (9th Cir. 2003).

It has also long been established that an unnecessarily excessive duration of canine bites can be unconstitutional. *Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998) (denying

qualified immunity when officer allowed a dog to bite a suspect for ten to fifteen seconds while surrounded by other officers with guns); *see also Miller v. Clark*, 340 F.3d 959, 962, 967–68 (9th Cir. 2003) (granting qualified immunity where officer commanded the dog to release the suspect as soon as the officer saw the suspect was unarmed, but noting that one minute was "an unusually long bite duration"); *Sweiha v. Cnty. of Alameda*, No. 19-CV-03098-LB, 2021 WL 292517, at *5 (N.D. Cal. Jan. 28, 2021) ("For more than 20 years, it has been clearly established that excessive duration of [a dog] bite or improper encouragement of a continuation of an attack by officers could constitute excessive force that would be a constitutional violation.").

Defendants attempt to compare this case to *Hernandez v. Town of Gilbert*, in which qualified immunity was found to attach where the officers had maintained the police dog's bite while the suspect continued to actively resist.[2] 989 F.3d 739, 744–47 (9th Cir. 2021). The facts of *Hernandez*, however, are distinguishable from the circumstances here. In *Hernandez*, the body cam footage showed that "inability did not prevent Hernandez from complying with the officers' directions." *Id.* Further, both during the bite and after the dog had been called off, the suspect in *Hernandez* continued to physically and verbally refuse to comply. *Id.* Based on the video footage, the *Hernandez* court concluded that "no reasonable officer facing such a recalcitrant suspect would be likely to think Hernandez was 'completely under control.' " *Id.*

Here, Plaintiff argues that Defendant Officers allowed Tyson to continue biting him long after Plaintiff had been subdued, and, pointing to the body cam footage, that Tyson was biting Plaintiff for a total of two minutes. Opp. 10; Mot. Hr'g Tr. 25:13-14. In response, Defendants

[2] Defendants also attempt to point to *Mendoza v. Block*, where the Ninth Circuit found that qualified immunity applied where the suspect had struggled with the police dog and the officer maintained the dog's bite. 27 F.3d 1357 (9th Cir. 1994). In *Mendoza*, however, the trial court resolved disputed questions of fact by agreement of the parties and had concluded the suspect had actively struggled with the dog during the bite. *Id.* at 1362. And, the Ninth Circuit recognized that there was a clearly established right in *Mendoza*, even if the officer's conduct in that case ultimately did not violate that right. *Id.*

Defendants' argument therefore does not change this Court's conclusion that the law clearly established a right under these circumstances, and, further, genuine disputes in material fact for the jury to resolve as to whether that right was violated.

argue that the duration of Tyson's bite is justified because Plaintiff neither surrendered nor was under the officers' control until he was placed in handcuffs. Reply 5. Defendants further dispute that Tyson's bite was two minutes in duration. Mot. Hr'g Tr. 16:23-17:10.

The Court finds that, first, the law clearly establishes that allowing police dogs to bite unresisting suspects who do not pose a threat to safety, as well as excessive duration of the bite, constitutes excessive force that would be a constitutional violation. *See, e.g.*, *Watkins*, 145 F.3d at 1093; *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994), *as amended* (May 31, 1994). Further, disputes of material fact remain for a jury to resolve as to when Plaintiff was actively resisting while Tyson was attached such that he was not effectively subdued by Defendant Officers, as well as to the duration of Tyson's attachment. If a jury finds that Plaintiff was not actively resisting during Tyson's bite, or that the duration of Tyson's bite was unreasonable under the circumstances, Defendant Officers would have violated clearly established law prohibiting such conduct.

As the Court cannot resolve the questions regarding reasonable force and qualified immunity at this stage, the Court **DENIES** summary judgment as to Plaintiff's § 1983 excessive force claim as to the continuation and duration of the dog bite.

### B. State-Law Claims

Defendants also move for summary judgment as to Plaintiff's remaining state-law claims. Mot. 17–20. Plaintiff, in response, argues all of Defendants' arguments regarding his state-law claims necessarily fail because Plaintiff has shown that excessive force did occur. Opp. 11. As the Court has concluded that there is a triable issue of material fact on excessive force, Plaintiff's argument has some merit.

The Court addresses each of Plaintiff's remaining state-law claims in turn.

#### 1. Claim Six: Violation of the Bane Act

The Bane Act authorizes individual civil actions for damages and injunctive relief by individuals whose federal or state rights have been interfered with by threats, intimidation, or coercion. *See* Cal. Civ. Code § 52.1(a) (proscribing interference "by threat, intimidation, or

coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state"); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998) (interpreting Bane Act's use of "interferes" to mean "violates"). "[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 798 (2017), as modified (Nov. 17, 2017). Instead, the Bane Act requires that a defendant had a specific intent to violate the plaintiff's protected rights. Specific intent does not require a showing that a defendant knew he was acting unlawfully; "[r]eckless disregard of the 'right at issue' is all that [is] necessary." *Cornell*, 17 Cal. App. 5th at 804.

Defendants attempt to rely on *Bender v. County of Los Angeles* to argue that a Bane Act claim based on excessive force also requires violation of some right other than the plaintiff's Fourth Amendment rights, but misrepresent that case. 217 Cal. App. 4th 968, 978 (2013). In *Bender*, the California Court of Appeal expressly declined to weigh in on the instant question, but, even so, rejected the defendants' contention that Fourth Amendment rights were not among the constitutional rights protected by the Bane Act unless another constitutional right was violated at the same time. *Id.* Defendants do not, and cannot, point to any authority that actually supports their proposition. *Tucker v. City of Elk Grove*, No. 220CV01620DADKJN, 2023 WL 4827470, at *13 (E.D. Cal. July 27, 2023) (finding that because the Bane Act claim was based on the same facts as the Fourth Amendment claim, and because the court had already found that a reasonable juror could find excessive force in violation of the Fourth Amendment, that a reasonable juror could conclude from those same facts that the defendant officers acted in reckless disregard for plaintiff's rights); *Bauer v. City of Pleasanton*, No. 19-CV-04593-LB, 2021 WL 2224016, at *19 (N.D. Cal. June 2, 2021) (same).

The Court has already determined that a reasonable jury could conclude that Defendant Officers used excessive force in violation of the Fourth Amendment when they maintained

United States District Court
Northern District of California

Tyson's bite until Plaintiff was handcuffed. For the same reasons, the Court finds that, when viewed in the light most favorable to Plaintiffs, a reasonable jury could find that this same conduct constitutes reckless disregard of the Fourth Amendment.

Therefore, the Court finds disputed material facts preclude Defendants' request for summary judgment as to this claim, and **DENIES** summary judgment as to the Bane Act claim.

**2. Claim Seven: Battery**

The elements of battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff. *Nguyen v. City of Union City*, No. 13-1753 DMR, 2013 WL 3014136, at *5 (N.D. Cal. June 17, 2013). A battery claim also requires the plaintiff to prove that the officer "used unreasonable force." *Bauer v. City of Pleasanton*, No. 19-CV-04593-LB, 2021 WL 2224016, at *19 (N.D. Cal. June 2, 2021) (citing *Munoz v. Union City*, 120 Cal. App. 4th 1077, 1102 (2004)). The test for reasonableness for a state-law battery claim against a police office is the same as the test for a § 1983 claim alleging a Fourth Amendment claim. *Id.*; *see Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013).

Defendants attempt to argue that they have made a prima facie showing that their actions were reasonable in light of the danger that Plaintiff posed, but the Court disagrees. For the same reasons as above, a reasonable jury could conclude that maintaining Tyson's bite constituted unreasonable force, and the Court therefore **DENIES** summary judgment as to Plaintiff's battery claim.

**3. Claim Eight: Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege facts to sufficient to show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' " *Corales v. Bennett*, 567 F.3d

554, 571 (9th Cir. 2009) (quoting *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007)).

As above, there is a triable issue of material fact as to whether Defendants' use of force was excessive; for the same reasons, there is a triable issue of material fact as to whether the use of force was "extreme" or "outrageous." *Watson-Nance v. City of Phoenix*, No. CV-08-01129-PHX-ROS, 2011 WL 13152466, at *9 (D. Ariz. June 16, 2011) (citing *Tekle*, 511 F.3d at 856) (IIED claim survived where excessive force claim survived). As a result, the Court **DENIES** summary judgment on the IIED claim due to the same factual disputes regarding the Fourth Amendment excessive force charges.

**4. Claim Nine: Negligence**

Finally, "public employees in California are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions." *Hayes v. Cty. Of San Diego*, 57 Cal. 4th 622, 628–29 (Cal. 2013). To support a negligence finding, a plaintiff must show that the defendant public employee had a duty to exercise due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury. *Id.* An officer's intentional shooting death of an individual may give rise to negligence liability where the officer failed to exercise due care. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 534 (Cal. 2009) (citing *Munoz v. Olin*, 24 Cal. 3d 629, 624 (Cal. 1979)). The California Supreme Court "has long recognized that peace officers have a duty to act reasonably when using deadly force," whereby "[t]he reasonableness of an officer's conduct is determined in light of the totality of circumstances." *Hayes*, 57 Cal. 4th at 629.

Again, this inquiry overlaps with the Fourth Amendment analysis above in that it turns on the reasonableness of Defendant Officers' use of force. *See, e.g., Hernandez v. City of Pomona*, 46 Cal. 4th 501, 514 (Cal. 2009) (applying Fourth Amendment excessive force standard to California negligence claim). Neither party suggests that the California negligence standard differs from that analysis in any way material to this case. Defendants reiterate their position that they acted reasonably because Plaintiff was a threat to officer safety until he was placed into handcuffs. Mot. 19–20.



United States District Court
Northern District of California

The Court has previously found triable disputes of material fact as to whether was Plaintiff was subdued or actively resisting that precludes a finding that Defendant Officers' conduct was unreasonable or in breach of their duty to exercise due care. For the reasons discussed above, it is for the jury to decide whether Defendant Officers acted as any reasonable officer would, and thus the Court **DENIES** summary judgment as to Plaintiff's negligence claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' motion for summary judgment. Specifically, the Court **DENIES** summary judgment on the first (excessive force), sixth (Bane Act violation), seventh (battery), eighth (IIED), and ninth (negligence) causes of actions as it concerns the police canine's continued bite, and **GRANTS** summary judgment on these same causes of action concerning the initial deployment of the canine. The Court further **GRANTS** Defendants' motion as to all other claims.

**IT IS SO ORDERED.**

Dated: November 19, 2026

EDWARD J. DAVILA
United States District Judge